May it please the Court. My name is Chris Batard, and along with Amicus Counsel Dara Smith from the American Association of Retired Persons, we will be arguing on behalf of Appellant Rochelle Flynn. Basically, this case breaks down to two issues. The first issue is whether Dr. Rochelle Flynn is a qualified individual with a disability under the Rehabilitation Act of 1973, the Americans with Disabilities Act, and the 2008 amendments. And second, as a qualified individual with a disability and independent contractor, does she have the right to file a private action against an entity who has received federal funds under the Rehabilitation Act of 1973, specifically Section 504. I will be arguing the first issue, and Ms. Smith will argue the second issue. On a point that's raised in the Amicus brief, the parties talk about this as a lack of standing, and the judge says there's a lack of standing, but isn't it instead of a lack of standing, isn't it statutory whether you're covered by a statute? It is a matter of coverage, and that is what Ms. Smith will discuss, is that it's really a matter of coverage. Does the Section 504 A and D of the Rehabilitation Act, does that cover independent contractors with disabilities? And if it does cover, then that would give them standing at that point in order to file such a suit. What's the point you're going to discuss? I thought that was the whole issue here. I know that there's an issue raised about she either does or does not show that she was improperly discharged and all, but the district court didn't address that point, and that's what, if we reach that, we would remand to the district court, I'm pretty sure, to go through the record, et cetera, et cetera, and issue an opinion. Well, there were two issues that were briefed. One was whether she's a qualified individual with a disability, and the appellee argued that she is not. Right, but the appellee acknowledges that it would be sent back to the district court to hash all that out, wouldn't it? Well, obviously, if she was a qualified individual with a disability, absolutely. And that hasn't been addressed by the district court yet, has it? Well, not necessarily. Other than the district court saying she was not covered by the Act because of a, quote, lack of standing, close quote. That's true. The district court never got to the merits of the case and, as such, didn't discuss whether or not she, in fact, was a qualified individual with a disability. However, in order to ensure that she, in fact, is covered by the statute, we do have to show that she, in fact, was a qualified individual with a disability. So it seems that that would be part and parcel of the argument of whether she's covered is to make a determination or have the court make a determination that, in fact, she has a disability. I think you need to spend your time on that other issue. We're going to send that back if we go away on the other issue. I wanted to ask you about, and I don't believe either party addressed this, or if they did, I missed it. But as I understand it, the assertion is made, and maybe there's evidence in summary judgment record, that when she developed this disability, claimed disability, it was the government, I guess the Air Force Base or whatever, that advised that it could not accommodate her request for, Dr. Flynn's, request for accommodations. But what is the import of that? In fact, that it wasn't distinctive home care that said we can't accommodate your request. It was the government saying we can't accommodate your request. That seems to me to possibly bear on whether she's covered by the Act. Maybe a favorable point for her being covered by the Act, that it was the government, not Flynn, that said we can't accommodate you. Well, if we're going to go to the issue of accommodation and whether or not it was the government that made that determination rather than distinctive, I would think that would be somewhat of a separate issue. All right. As opposed to whether or not she's covered by the Act. All right. To address— Is the government in a different position than a private employer or independent contractor? Well, the government is obviously the ultimate customer or client in this situation. Oh, I understand that. But legally, though, is there a difference in the government's liability in a rehab case than a private employer or independent contractor? If she were the contractor that contracted with the government and the government then made this decision toward her, then I think that she would be in the same position she is now as she is with distinctive because her contract would have been with the government. Okay. So I think that— You're in the same position is what you're saying. I believe that that's correct. And, of course, the Rehab Act also deals with government employees who have disabilities who bring actions against the government themselves. But that's not what we have here, obviously. In order to address the Court's questions about the Act itself, what we stated in the brief was that in 92, Congress amended the Rehab Act, and I'll call the Rehabilitation Act 1973 the Rehab Act, so that it conformed with the ADA, so that the standards that were used in order to interpret what a violation of the Act would be would be consistent between the two Acts. But what it did not do in 92 was to cause the language to change so that an employee then became covered under the Rehab Act as opposed to an independent contractor. Because the Rehab Act deals with covered entities, covered entities being those that receive federal funding, and that did not necessarily apply to employers. In fact, what the amendments did was to ensure that independent contractors were covered as opposed to not being covered by the Act, and that it dealt with who was being covered as opposed to what entities. But let me defer to Ms. Smith since my time is up and allow her to further elaborate on that argument. Thank you, sir. All right, Ms. Smith. Good morning, Your Honors. May it please the Court, I'm Dara Smith, and I represent AMICI, and I'm discussing the independent contractor coverage issue. The statutory text in this Court's precedent, as well as legislative history, makes it clear that Section 504 does apply to independent contractors. And the statute's reference to Title I of the ADA does nothing to change that. As far as our cases, I don't think we have anything that is flatly binding, but the cases we do have indicate that the Rehab Act and the ADA's requirements are the same. We've got that Luna case, and we've got the Soledad case, and Pace in-bank case that say the rights and remedies under the ADA and Rehab Act are the same. Yes, Your Honor, and in general that's true. The two acts do tend to go together. But the Soledad case is a perfect example of why they're not identical. So in most ways they're the same, but there are times when the statutory text of the Rehab Act makes it so that the acts have to be interpreted differently. And Soledad addressed the sole cause standard under 504, which is different from the ADA. There is some disagreement over what the causation standard is under the ADA, but it's not sole cause. And this court explained in Soledad that because 504 specifically says that it has to be solely on the basis of disability, that instead of overriding that with the ADA's causation standard, which is more lenient, the court had to go with the sole cause standard. And that's basically exactly what's going on here. The coverage provision of 504 says no otherwise qualified individual with a disability, which is different from the limitation to employees under Title I of the ADA. So the coverage provision in 504 is much broader, and that's different from the coverage provision of the ADA. So the standards are supposed to be the same, whether the act has been violated is how 504 puts it. I mean, there's some pretty strong legislative history that indicates when Congress passed that amendment incorporating the standards, that they wanted consistency between the two acts. That's right, Your Honor, but they didn't intend to limit coverage. They intended to— What tells you that? A couple of things. So going directly to the legislative history, there's some very strong statements that this was about extending— the Senate report that we cited in the brief said that it was about extending coverage to create a comprehensive set of protections to respond to the needs of any individual who wants to work. And that's nothing having to do with employees versus independent contractors. In fact, individuals under 504 covers a whole swath of people, including employees, also contractors, but also anybody who goes to a public park or participates in any program or activity of any entity that receives federal funds. It's a very comprehensive statute. And so there's really no indication of that. Plus the language that is referred to in the Schrader v. Ray case in the Tenth Circuit that says, those who are covered by Title V of the Rehabilitation Act will know that the same standards apply, indicating, according to the Tenth Circuit, that coverage is already a done deal and that it's just the standards that they wanted to adopt. And the reason for that is that when the ADA was passed, which was after the Rehab Act, basically there was a lot more case law and a lot more development on what constituted discrimination, what was a reasonable accommodation, who's a qualified individual. That was fleshed out a lot more in the case law, and Congress wanted to take advantage of that. And so in 1992, they adopted those standards. But there's no indication that they believed that that would limit the coverage of the Rehab Act. They certainly didn't. Do you find any support in Senator Harkin's statement about what this amendment does? Or have I got that wrong? No, that's right, Your Honor. Senator Harkin is the one who referred to those who are covered by Title V of the Rehabilitation Act. And he talked about consistency, but he talked about coverage first. And so that's what Schrader took as meaning that coverage was unchanged under the Rehab Act. He seemed to single out discrimination and accommodation as the two main things that were being brought into the Rehab Act by the amendment. That's exactly right, Your Honor. It was about what constitutes discrimination, what is a reasonable accommodation, all of these concepts that had been factually fleshed out in all of the ADA cases that they wanted to adopt. There's certainly no indication that they wanted to limit coverage there. The other way that that is evident is in the statutory text itself. If that amendment had been intended to limit coverage, you would expect to see something in 794A, that coverage provision that would say, except as provided in 794D, which is the part that adopts the relevant standards of the ADA, or subject to the limitations in 794D, there's something like that that would have been introduced into the text to suggest that it was intended to be limiting. This case was brought as an employment discrimination case. So doesn't that say to us that they're talking about an employee relationship? Your Honor, it was phrased as employment discrimination. That's true. And perhaps that's not the best way to phrase it. But the fact is that this is just most analogous to an employment type of case under the Rehab Act. So under 504, because it covers all otherwise qualified individuals with disabilities, the employment framework is the closest way to having a structure to analyze these types of claims. And that's why it makes sense to plead it as an employment discrimination claim. And maybe it shouldn't have been phrased exactly that way, because that's not perhaps... You've got to take the pleadings as they are, not how they might have been. That's true, Your Honor. But under the Rehabilitation Act, this is still a cause of action. The question here, and the one that the district court decided, is whether independent contractors are covered, phrasing it as whether they had standing. But as you pointed out, Your Honor, that's not the question. Well, under the pleadings, the way the case was pled, if you plead a case as an employment discrimination case ordinarily, that would mean you're suing your employer, I would think. Your Honor, it's one question whether an individual plaintiff fails to make their case because they plead incorrect factual allegations or something like that. But what we have here is a question of whether independent contractors are covered by Section 504 of the Rehab Act at all. We decide cases that are presented to us according to their pleadings. We don't just decide hypothetical cases. We decide the case in front of us. That's true, Your Honor. Perhaps that could certainly be an obstacle. But if the question is whether an independent contractor, and that's what we've weighed in on, is whether an independent contractor can ever be covered under this provision, then the fact is that they are. And so if they fail to prove the allegations that they pled, if she pled that she was an employee and she failed to prove that she was because she's an independent contractor, then that would be a different issue. But she didn't have to show that she was an employee to be covered by the Act. So that's really what we're — Well, again, it's not disputed that the defendant is defending on the basis that she's an independent contractor, is it? That's right, Your Honor. I mean, well, that certainly puts this whole thing at issue. I don't understand what my colleague's talking about. I'm sorry, Your Honor. Maybe I'm confused as well. I think the — she's always — she is an independent contractor. I don't think that's an issue. And the question is then whether she can bring a claim. If the defendant is ready to treat her as an employee, then she's entitled to coverage differently. But the defendant is not admitting that, I don't believe. That's right. And the defendant has not argued that she is an employee.  Plaintiff ordinarily is the master of his case, and he's stuck with his pleadings. Now, whether that's going to bar him, I don't know. But, I mean, I think that's a problem for you. Well, that could be a potential hurdle in this case. As to the question of — Don't waste your time. I mean, if you've got any other arguments, go ahead. Certainly, Your Honor. I want to ask you about the question I asked counsel for the plaintiff about the fact that it was the government that refused the accommodations. Does that in any way bear on statutory coverage as opposed to it bears on the merits of the case? We don't think so, Your Honor. A case against the government would be a Section 501 case. So that could have been a different cause of action that was brought. But that's not really relevant to the question of coverage here. Okay. I just really quickly want to get to the secondary argument about bringing a participant claim, because it's very clear that any individual with a disability is covered, and so if this is so unlike an employment claim that it can't be brought as an employment discrimination claim, then it has to be brought as a participant claim under 504 because independent contractors are not excluded. But employment is the closer analogy, and that's why it's more appropriate to treat it like that. Thank you, Your Honor. Okay. Thank you very much. Okay. Mr. Mango. Good morning, Your Honors. I know the Court is familiar with the record. If I may just address a couple of points that the judges have raised in questioning Judge Barstow with regard to Mr. Petard's argument. It is correct that the appellee included and addressed the arguments with regard to whether or not Dr. Flynn established a case that she was, in fact, disabled, but that was done simply in abundance of caution. Our position has been from the beginning that that wasn't addressed to the district court, but we didn't think it was a good idea to just completely ignore it and assume that Your Honors would rule that way. But clearly, the district court made no determination whatsoever as to whether or not she was a qualified individual or whether or not she had a disability. I just wanted the Court to know that we put that in for fear of not putting it in and wanted to at least have it addressed and to rebut the points because — if the merits are going to be reached, it needs to be remanded to hash all that out. I concede that, Your Honor, absolutely. I just wanted to point out that it wasn't addressed at the lower court. And, Judge Dennis, if I may address your inquiry with regard to the legislative comments, and I think it's important to point to what Senator Harkin said because it continues a thread that is present and, as Judge Davis has pointed out, with regard to the fact that these are employment cases and employer-employee relationships. And as you know, Distinctive is not the employer of Dr. Flynn. Distinctive entered into a contract with Squids and Squiggles, which is a company that Dr. Flynn started. And before that, they accepted federal funds. Well, it is a government contract. Like so many government contractors, this company provides — But when you receive federal funds, you know going in as a quid pro quo, you're going to have to do something a little different, a little extra. You're going to have to protect — You have to play by certain rules. You can't discriminate against people that you could otherwise. That is true, Your Honor. But in our situation, I just wanted to point out that — that Dr. Flynn could have had an employer-employee relationship. She elected to start this company, this LLC, and elected to use that vehicle to have her contract. And there's a quid pro quo there, too. If you decide that you don't want to have an employer-employee relationship, then you may be foregoing some of the benefits that you might have under the discrimination statutes with regard to the statutes that are specifically for employees. Of course, that's why we're here, because she is and has been a contractor. That's exactly right, Your Honor. But I just want to point out that your client is a recipient of federal funds. That is correct, Your Honor. That's another reason we're here. Yes, that's right, Your Honor. But if I could point to the language that Senator Harkin was citing to it in the record, he said, now those who are covered by Title V of the Rehabilitation Act will know that these are the definitions of reasonable accommodation and discrimination that apply. In other words, the definitions of the ADA are going to go over to the Rehabilitation Act. They will also know that the standards governing pre-employment inquiries and examinations and inquiries of current employees apply. So the focus of the Congress, Your Honor, it seems to me, is right there in the language that is focused on employees and employment relationships. And that's what they're trying to clarify, because it's not only to enact these statutes. As he further says, it is to assure that there will be consistent, equitable treatment for both individuals with disabilities and businesses under the two laws. It seems to me, Your Honor, and our argument is, is that businesses such as Distinctive Home Care that engage independent contractors on these government facilities are entitled to know what sort of exposure they're entitled to discriminate against them. No, sir. I'm not saying that. And if there's any discriminatory action taken in this case, which I would suggest that the record, if it ever goes back to that, would show that it wasn't. But as Your Honor has pointed out, the government is the entity, prior to even being aware that there was an issue with regard to this alleged disability, that made the determination, because as Your Honor knows, our client is in the business, as many government contractors are, of placing individuals on military bases or remote places where they have no control over the day-to-day. That relationship is you're going to go to X base, and you're going to work with the government individual, and they're going to control when you go to work, where you work. Mr. Mengel, if this case had come up differently and your client had offered her an accommodation that was reasonable, I'm sure you would be defending on that basis, wouldn't you? In other words, when Senator Harkin said what the Act would do, he was saying that they were going to use the same concepts and philosophy that the ADA developed in accommodation and discrimination and pre-employment, pre-preliminary applications. But that didn't mean that they were going to totally incorporate everything from the ADA, Title I. He was emphasizing the things they were going to try to use to improve the ADA, improve the Rehabilitation Act, not transform the whole Rehabilitation Act or limit it to corporations with over 15 employees and things of that nature. Well, Your Honor, I think that's less than perfectly clear. I know it's not perfectly clear. Pardon me? I know it's not perfectly clear because that's why we have a split in the circuits. That's exactly right, Your Honor. And I think that there's going to have to be a determination made. I think there's a balance that has to be struck. It seems to me that independent contractors are entitled to, as individuals are entitled to know, independent contractors should be entitled to know what they're exposed to in terms of liability. Well, this is not the first vague statute we've seen. No, sir. Vague statutes out there all over the countryside. They're drafted by human beings. That's right. But, you know, it does seem to me there's a stretch to say that the word standards includes who can be sued. Well, I think that's the position that I believe the Sixth Circuit has said that they have not adopted. But, Your Honor, the trend that I'm aware of in this circuit is that this statute is designed to address the employer-employee relationship. And that's really what's at issue here. I mean, conceptually, how do you get who can be sued out of the word standards? Well, I looked at the definition of standards in the dictionary last night, Your Honor. I didn't get a whole lot of guidance on that particular question. It depends on how you ask the question, too. I beg your pardon? It depends on how you ask the question, too. Yes, sir. I could say that, you know, doesn't the statute provide who is a victim of a violation of this act? And it doesn't have to be an employee. It doesn't have to be a certain kind of person. It has to be someone who is being discriminated against or not accommodated by the recipient of federal funds. That's correct, Your Honor. But I do think that, as Ms. Smith pointed out, this is a broad-based statute that's not just zeroed in on the employment relationship. This is to protect folks that go to parks. And so, naturally, it has to be broad vis-a-vis that aspect of it, access to federally funded programs. But it also says that if you discriminate in a program or activity that the federal recipient is conducting, that is a violation of the statute. And that identifies who a different way. True, Your Honor. A person being discriminated against by the federal recipient. That's true. But in the first instance, this is not a participation case. And I would like to point out to the Court that participation has been raised as an issue, as a fallback position, for the first time before Your Honors. And just as with the determination below that whether or not she is disabled, this case, we would take the position that you can't raise a participation argument at the first instance at the appeal level. She didn't bring this as a—they didn't bring this as a participation case down below. They brought it clearly as an employment case only. And so, it is our position and it is our position in the brief that the Court should not consider the participation argument. How can she not be a participant? Your Honor? How can she not be a—I'm not sure—what do you mean by participation? Well, what I mean by that is that there are two ways to advance an argument under the Rehabilitation Act. The restrictions that we're speaking of are strictly applying to the employment context. The appellant has made an argument, well, even if she's not—even if independent contractors aren't covered, she's still a participant, so she's covered. But that argument was not made—the participation argument wasn't made below, Your Honor. They simply brought an employment law case. So I'm simply saying that that is being raised for the first time at this level. If the Court decides that it's appropriate to raise it here, then our argument is overruled in that regard. Well, I didn't mean to raise an argument she didn't raise, but it seems to me that an independent contractor who is participating in the health care scheme as an independent contractor should not be barred simply because of the form that she is participating in. Well, Your Honor, she has other remedies against—at least she had the remedy of breach of contract also against our client. But I understand—I take Your Honor's point, but that certainly doesn't take away from the fact that when the statutory language was amended, that the standards applicable to the ADA were to come over to the Rehabilitation Act and that the case law, while there is a split, certainly I would submit the case law in this jurisdiction at least, in this circuit, would appear to be that employment law cases of this nature are designated to address the employer-employee relationship. And the downside of not doing that is it exposes an employer to lack of certainty as to what sort of claim they may be brought against. Well, then, you know, the argument would be then don't hire independent contractors. Use your own employees. The flip side of your argument is if an employer doesn't want to have an employee-type claim made against it under the Rehabilitation Act, then just use independent contractors. Don't have your own employees. I mean, you know, this parade of horribles your brief presented about the floodgates that would be opened if our Court ruled that you don't have to be a, quote, employee, close quote, they're the same countervailing arguments on the other side. That's true, Your Honor. Be redundant. Well, and there may be other remedies available to an individual, perhaps an ADA claim in that circumstance, but I understand Your Honor's point. So, Your Honor, I believe I've addressed most of the case in our brief unless Your Honor has any further questions. Do you agree that it's not really a question of standing? It's a question of just coverage? I think that's a fair reading, Your Honor. I do. Tell me conceptually why standards should be read broad enough to include who you can sue. Well, Your Honor, I think standards can be read to address the applicability of the statute, the factors that are involved in being able to bring this sort of action. And one of the factors that's involved in being able to bring this sort of action is the employer-employee relationship. In the absence of, if that doesn't come along with the standards that are applicable, then I agree it's a problematic argument, Your Honor. But certainly we would urge the broader reading of the word standard. Do you say that the two acts should be consistent in every way? In other words, you've got all these, you've got the causation difference in the two acts. You've got fewer than 15 employees in one act. I mean, is that all wiped out and they're totally consistent now? I think, Your Honor, if there is an inconsistency in the reading of the two acts, then if there is a specific provision in the Rehabilitation Act that addresses a certain question, it would not necessarily be trumped by the ADA provision if it's more specific in the Rehabilitation Act. Of course, the coverage in the Rehab Act is very broad. It's not limited. And so, I mean, in one sense, you are limiting the broad coverage in the Rehab Act by importing employees. Well, it is broad, Your Honor. It's designed to cover more relationships than simply the employment relationship as well, hence the broad scope of it. But I understand Your Honor's point that— Is it correct that the word employer is never mentioned in the Rehabilitation Act? I think that, Your Honor, I couldn't attest to knowing every single word of the act. I think that the position they were taking was employment was not mentioned. I read a lot of your argument that said that. I just wondered if that's right. The employment is certainly mentioned, but whether the actual word, Your Honor, I would have to defer to the statute for that. Okay. I appreciate that. All right. Thank you very much. Thank you, Your Honor. Okay. Mr. Patard? Mr. Patard, to just solidify for our tape and confirm, you're not challenging the dismissal, summary judgment and dismissal of the breach of contract claims? No, we didn't challenge that, Your Honor. So the only thing left in this case is the Rehabilitation Act claim? Correct. All right. As was stated earlier, when you were asking opposing counsel about standards, the reason the standards were changed was so that the courts can rule the same way about cases that come before it from the Rehabilitation Act versus the ADA. But because the standards were changed did not mean that who was being covered as far as who could sue and who could be sued was being changed by making sure the standards conformed between the two acts. You're not saying that the incorporation made both acts totally consistent so that in every respect they should be applied the same? That's correct. If incorporation was Congress's intent, then they would have said this incorporates the ADA in its entirety, but they didn't do that. They talked about the standards being incorporated only. The employer is the entity that can be sued under the ADA. Under the Rehab Act, it's covered entities, those which receive federal funds. That allows independent contractors who have disabilities to sue covered entities, such as is distinctive in this case. Not to allow independent contractors who have disabilities to do that would close the door completely on the causes of action toward covered entities, and the court can't allow that to happen. Other protected classes are allowed to sue covered entities under other statutes for race, color, religion, sex, and so forth. But to deny disabled persons that same right would shut the door completely on their causes of action against those who receive federal funds. Based on the arguments in the briefs and the arguments today, this court should reverse and remand this case back to the district court for further proceeding. If you have no further questions. Okay, thank you very much. Thank you, counsel. We have your argument.